**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

Therapearl, LLC           :
                          :
                          :
    v.                    :   Civil No. CCB-13-2792
                          :
                          :
Rapid Aid Ltd.            :
                          :

**MEMORANDUM**

Plaintiff Therapearl, LLC ("Therapearl") filed this action against Rapid Aid Ltd. ("Rapid Aid"), asserting various claims related to business dealings and legal proceedings in Canada. Now pending before the court are (1) Therapearl's motion for entry of default against Rapid Aid; (2) Rapid Aid's motion to dismiss Therapearl's complaint; and (3) Therapearl's motion to strike Rapid Aid's motion to dismiss. The court finds oral argument unnecessary to resolve the issues. *See* Local R. 105.6 (D. Md. 2011). For the reasons stated below, Therapearl's motion to enter default will be denied along with its motion to strike, and Rapid Aid's motion to dismiss will be granted.[1]

**BACKGROUND**

This case concerns a dispute between Maryland-based Therapearl and Canada-based Rapid Aid, both of which make hot/cold therapy products. (Compl. ¶¶ 4-5, ECF No. 1.)[2] These products consist of packs that can be heated or cooled to provide hot or cold temperature therapy. (*Id.* ¶ 13.) Shoppers Drug Mart ("Shoppers"), a large drug store chain in Canada, began carrying Therapearl's "branded" products (i.e., products displaying the Therapearl brand name) around

---

[1] Because other issues in this case are dispositive of its resolution, the court does not address Rapid Aid's argument based on the doctrine of *forum non conveniens*.
[2] At this stage, the court takes as true the allegations in Therapearl's complaint.

1

December 2010.  (*Id*. ¶¶ 10, 24.)  Around March 2012, Therapearl entered into an agreement with Shoppers to provide it with an additional "private label" line of products made and supplied by Therapearl but bearing a different brand.  (*Id*. ¶¶ 25-30.)  Rapid Aid, which had long been a Shoppers supplier, felt threatened by Therapearl's success in general and this private label contract in particular.  (*Id*. ¶¶ 31-32, 34.)  On May 31, 2012, Rapid Aid filed suit against Therapearl in Canada ("the Canadian litigation"), asserting Therapearl's use of the words "patent pending" on its products in Canada was unlawful because Therapearl had no Canadian patent pending.  (Def.'s Mot. to Dismiss Ex. A ¶ 1(a), ECF No. 14-2.)  Therapearl alleges Rapid Aid filed the suit merely to "frustrate or terminate Therapearl's contract with Shoppers," and this "sham lawsuit" was predicated on "objectively baseless claims" and "fabricated facts."  (*Id*. ¶¶ 34-35.) [3]  Sometime after the Canadian litigation commenced, Shoppers suspended its private label agreement with Therapearl.  (Compl. ¶ 84.)

Despite the ongoing Canadian litigation, Therapearl filed suit in this court on September 23, 2013.  The four-count complaint alleged Rapid Aid (1) requested an unlawfully overbroad injunction in the Canadian litigation and sought a declaratory judgment that Therapearl may make accurate patent-related representations regarding its products; (2) violated Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2; (3) tortiously interfered with Therapearl's contractual and/or business relationship with Shoppers; and (4) engaged in unfair competition in violation of Maryland common law.  (*Id*. ¶¶ 57-91.)

---

[3] Therapearl presumably describes the Canadian litigation as a "sham" in order to circumvent the potential immunity Rapid Aid would enjoy under *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127 (1961).  Under *Noerr*, an act of litigation generally may not be used to establish antitrust liability unless it is a "sham."  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).  Though a portion of Rapid Aid's "Amended Statement of Claim" in the Canadian suit has been stricken as "vexatious," the litigation is apparently ongoing.  (Pl.'s Opp. to Mot. to Dismiss Ex. A, ECF No. 24-1.)

Therapearl did not serve the complaint on Rapid Aid, however, until December 9, 2013. (Pl.'s Mot. for Entry of Default 1, ECF No. 9.) Due to a misunderstanding of Rule 12 of the Federal Rules of Civil Procedure, Rapid Aid's Canadian counsel, Joseph Etigson, failed to arrange for Rapid Aid to file a responsive pleading within 21 days of service, by December 30, 2013. (Def.'s Opp. to Mot. for Entry of Default, Etigson Decl. ¶ 6, Jan. 24, 2014, ECF No. 18-1.) On January 10, 2014, Etigson sent an email to Therapearl's counsel explaining his understanding that a response was due 90 days from the date of service, and requesting Therapearl's position on the issue. (*Id*. Ex. A, ECF No. 18-2.) Specifically, Etigson pointed to Federal Rule of Civil Procedure 12(a)(1)(A)(ii), and explained his view that under this subsection, any defendant served "outside any judicial district of the United States" was entitled to 90 days to respond to a complaint.[4] (Def.'s Opp. to Mot. for Entry of Default Ex. A.) Later that evening, Therapearl's counsel replied that the "Federal Rule is quite clear that the deadline is 21 days," and informed Etigson that Therapearl intended to move for an entry of default. (*Id*.) Therapearl did, in fact, move for an entry of default that same day. (ECF No. 9.) Rapid Aid then retained a U.S. firm to assist in the instant litigation. (Etigson Decl. ¶ 7, Jan. 24, 2014.) Now with the assistance of U.S. counsel, Rapid Aid filed a motion to dismiss on January 20, 2014, (ECF No. 14), and an opposition to the motion for default on January 27, 2014, (ECF No. 18). Therapearl moved to strike the motion to dismiss, (ECF No. 19), though it later responded to the motion, (ECF No. 24).

## ANALYSIS

### I. Motion to Enter Default Against Rapid Aid

Therapearl asks the court to enter default against Rapid Aid for its failure to timely file a

---

[4] This expanded deadline applies only if the defendant "has timely waived service under Rule 4(d)," rather than to every defendant served outside a U.S. judicial district. Fed. R. Civ. P. 12(a)(1)(A)(ii).

responsive pleading, and Rapid Aid opposes that motion. "[O]pposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion" to set aside an entry of default. *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). *See also United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985); *United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 844 (6th Cir. 1983). Here, where default has not been entered, but Rapid Aid concedes, appropriately, that it was late in responding to the complaint, the court will look to Rule 55(c) to assess Therapearl's motion.[5]

Federal Rule of Civil Procedure 55(c) provides that a court may set aside an entry of default for good cause. Though the determination of whether good cause exists "lies largely within the discretion of the trial judge," *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006) (citation omitted), there is "a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits," *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). In *Payne*, the Fourth Circuit articulated six factors to aid district courts in making this determination: "[1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic." *Payne*, 439 F.3d at 204-05. "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson*

---

[5] Federal Rule of Civil Procedure 60(b) becomes relevant when a party seeks relief from default judgment rather than mere entry of default, and presents a "more onerous" burden. *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010). A default judgment has not been entered here, and Rule 60(b) therefore does not apply.

*v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969).

As to the first factor, "[a] meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party . . . ." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). This "showing should underscore the potential injustice of allowing the case to be disposed of by default." 10A Wright, Miller & Kane, Federal Practice and Procedure § 2697 (Civil 3d 1998). Rapid Aid has raised several potentially meritorious defenses, including failure to state a claim. Rapid Aid has supported these defenses with evidence, including Etigson's declaration and various documents from the ongoing Canadian litigation. The first factor is therefore satisfied.

As to the second factor of whether Rapid Aid acted with reasonable promptness, Etigson asserts he first became aware on January 10, 2014, that the deadline to file a responsive pleading was 21 days following the date of service, rather than 90 days. (Etigson Decl. ¶ 6, Jan. 24, 2014.) Rapid Aid filed a motion to dismiss ten days later on January 20, (ECF No. 14), and filed its opposition to Therapearl's motion for entry of default on January 27, (ECF No. 18). Given the relative complexity of the issues in this case, Rapid Aid acted with reasonable promptness.

Therapearl focuses most on the third factor, Rapid Aid's personal responsibility. It argues Etigson's professed misunderstanding is suspect, and Rapid Aid's failure to immediately retain U.S. counsel reflected a tactic to increase its settlement demand from Therapearl. It is true, as Therapearl argues, Etigson should have shown the complaint to U.S. counsel immediately, and not relied on his own interpretation of Rule 12. But Etigson has conceded his error. (Etigson Decl. ¶¶ 6-7, Jan. 24, 2014.) The court credits Etigson's sworn assertion that he honestly misread Rule 12, and finds that his mistake, though regrettable, was made in good faith,

and did not rise to the level of gross neglect.

As to the fourth factor of prejudice to Therapearl, "delay in and of itself does not constitute prejudice" to the party opposing a motion to set aside an entry of default. *Colleton Preparatory Acad.*, 616 F.3d at 418. Rather, Therapearl asserts that because it has set out a claim under the Sherman Act, it has alleged harm "to free commerce itself." (Pl.'s Reply in Supp. of Mot. for Entry of Default 12, ECF No. 25.) Therapearl cites no authority for its theory that where a complaint alleges a violation of the Sherman Act, potential harm to free commerce suggests a court should assess the prejudice factor differently. Accordingly, Therapearl has failed to show itself prejudiced by Rapid Aid's delay.

As to the fifth factor, Therapearl has not alleged a history of dilatory action on the part of Rapid Aid.

As to the final factor of the availability of sanctions less drastic, Therapearl requests, as "an alternative sanction," attorney's fees and costs incurred as a result of pursuing the default. (*Id.* at 13.) "[S]anctions of a less drastic nature" may include "payment of costs [and] attorneys' fees . . . ." *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 921 (4th Cir. 1982). *See also Colleton Preparatory Acad.*, 616 F.3d at 418 (noting a district court's obligation to consider "an award of attorney's fees and costs" as a sanction less drastic than default). Though the court has found Etigson's mistake to be an honest one, it derived from his failure to timely consult U.S. counsel. The court will therefore award Therapearl reasonable attorney's fees and costs incurred as a result of pursuing its motion for entry of default. These reasonable attorney's fees and costs should not include expenses incurred in pursuing Therapearl's motion to strike Rapid Aid's motion to dismiss. Because good cause exists under Rule 55(c), however, the court will deny

Therapearl's motion to enter default.

## II. Motion to Strike Rapid Aid's Motion to Dismiss

Therapearl moves to strike as untimely Rapid Aid's motion to dismiss on the ground that Rapid Aid did not first move for an enlargement of time under Federal Rule of Civil Procedure 6(b). (Pl.'s Mot. to Strike, ECF No. 19.) *See* Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect."). In the alternative, Therapearl seeks monetary sanctions "for Rapid Aid's purposeful and dilatory conduct." (*Id.* at 2.)[6]

Therapearl argues that once December 30, 2013, had passed, Rapid Aid's "only recourse [was] to move . . . for an extension of time" under Rule 6(b). (*Id.* at 7.) It is true that Rapid Aid filed a motion to dismiss before filing its opposition to Therapearl's motion for default. But that fact does not present Rapid Aid with the additional procedural hurdle of demonstrating "excusable neglect" under Rule 6(b) for the late filing of its motion to dismiss. Once a party has demonstrated good cause for its "fail[ure] to plead or otherwise defend," Fed. R. Civ. P. 55(a), it need not satisfy the higher burden Rule 6(b) presents before filing a motion to dismiss or some other responsive pleading. None of Therapearl's authorities suggest that after the clerk's entry of default is requested but before default is entered, the party challenging default must satisfy both Rule 55(c) and Rule 6(b) before filing a responsive pleading; indeed, none present that issue.

---

[6] Therapearl urges the court to address statements made by Rapid Aid within the context of settlement negotiations. (Pl.'s Reply in Supp. of Mot. to Strike 10 n.11, ECF No. 26.) Rapid Aid argues the court is not permitted to rely on these statements, and attaches Canadian authority as support. (Def.'s Opp. to Mot. to Strike 3, ECF No. 20.) Though the court does not rely on or refer to these statements, they would not alter the court's conclusions. The court therefore does not reach the issue of whether it may look to the statements.

*See, e.g.*, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894-95 (1990) (rejecting admission of supplemental affidavits for failure to file a motion under Rule 6(b)); *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384-86 (Fed. Cir. 2005) (rejecting a late motion for attorney's fees unaccompanied by a motion under Rule 6(b)).

Therapearl's motion to strike Rapid Aid's motion to dismiss and its alternative request for sanctions are therefore denied.

### III. Motion to Dismiss Therapearl's Complaint

#### A. Motion to Dismiss Standard

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to

prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In considering a Rule 12(b)(6) motion, the court need not always limit its review to the pleadings. It can also take judicial notice of public records, including statutes, and can "consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted).

Therapearl's complaint is based in part on documents comprising the Canadian litigation, including an injunction Rapid Aid has sought in that litigation. Both parties have attached various documents from the Canadian litigation to their respective motions. Because the Canadian litigation is integral to Therapearl's claims, and because neither party disputes the authenticity of the Canadian litigation documents presented to the court, the court may properly consider these documents.

### B.  Declaratory Judgment Claim

Count One of Therapearl's complaint seeks a declaratory judgment concerning its use of patent-related representations. In the Canadian litigation, Rapid Aid requested an injunction restraining Therapearl from "making any false representation or misleading statement . . . to the effect that:"

>  (i) [Therapearl] ha[s] a "patent pending" in Canada;

>(ii) TheraPearl's[7] alleged "patent pending" pertains to it's [sic] "TheraPearl pack" . . . ;
>(iii) TheraPearl's alleged "patent pending" pertains to a "TheraPearl type" product which Rapid Aid proposed to sell to Shoppers Drug Mart or to any other member of the public in Canada; and
>(iv) TheraPearl may be entitled to compensation from Rapid Aid, or its customers, before any patent, arising from TheraPearl's alleged "patent pending", may issue in Canada.

(Def.'s Mot. to Dismiss Ex. A ¶ 1(a)).  Therapearl argues that because the second clause of this requested injunction does not contain the modifier "in Canada," it would, if granted by the Canadian court, "bar Therapearl from honestly representing [its] pending patent coverage in the United States."  (Pl.'s Opp. to Mot. to Dismiss 20, ECF No. 24)  Therapearl therefore seeks a declaration that it "may lawfully use patent related markings on its webpages, packaging, and products, and otherwise make accurate patent or intellectual property related representations relating to its products."  (Compl. ¶ 62.)

Under the Declaratory Judgment Act, a federal court may "declare the rights and other legal relations of any interested party seeking [a] declaration" when there is "a case of actual controversy within its jurisdiction . . . ."  28 U.S.C. § 2201.  "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  This requirement is satisfied when "'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Id*. (citation and footnote omitted).

Rapid Aid argues no such controversy exists because the Canadian litigation concerns Therapearl's use of the words "patent pending" in Canada only, and both parties agree that

---

[7] In the Canadian litigation, the parties write Therapearl as TheraPearl.

Therapearl may make appropriate patent representations in the United States. As support, it offers as a "judicial admission" a declaration from Etigson indicating that Rapid Aid never intended to restrict Therapearl's truthful U.S. marketing, as well as Etigson's view that Canadian courts lacks jurisdiction to "issue an injunction affecting Therapearl's rights in the United States based on United States patent law." (Def.'s Mot. to Dismiss Ex. B, Etigson Decl. ¶¶ 14-15, Jan. 17, 2014, ECF No. 14-4.)

The court agrees with Rapid Aid that the second clause of the sought injunction does not present a controversy sufficient to support a declaratory judgment. The injunction Rapid Aid seeks in the Canadian litigation is focused exclusively on Canada. To the extent Therapearl argues that, theoretically, the second clause of the sought injunction could potentially affect web-based representations visible in Canada but concerning U.S. patents, such a controversy is neither substantial nor sufficiently immediate. It is not substantial because Rapid Aid has represented to the court that it does not seek to restrain Therapearl's truthful U.S.-based representations, thus suggesting that no real controversy exists as to the potential scope of the second clause of the sought injunction.[8] It is not sufficiently immediate because the Canadian court has apparently not yet found in Rapid Aid's favor or issued an injunction (much less an injunction worded precisely in the way Rapid Aid has sought), and Rapid Aid has not challenged the truthful content of Therapearl's U.S.-based websites (something it has now represented to the court it does not intend to do).[9]

---

[8] Therapearl seeks to discredit Rapid Aid's representation by pointing out that it is unclear "what import these U.S. 'admissions' will have on the Canadian litigation" given the fact that Rapid Aid has not acted to amend its Canadian complaint "to alleviate the threat despite having had timely opportunities to do so." (Pl.'s Opp. to Mot. to Dismiss 18-19.) Therapearl misunderstands the value of Rapid Aid's representation. Even if not viewed as a formal judicial admission, the representation is an additional factor in assessing whether a substantial and immediate controversy exists as to the scope of the second clause of the sought injunction.

[9] Therapearl offers the declaration of Canadian attorney Bruce William Stratton that "[t]here is no reference [in the second clause of the injunction Rapid Aid seeks] to the injunction being restricted to statements made in Canada or

As an additional and independent reason for dismissing Count One, the court relies on its discretionary authority to decline to issue a declaratory judgment in this case. "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a) (emphasis added), not that it *must* do so." *MedImmune*, 549 U.S. at 136. Thus, the Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "The exercise of such discretion, however, is not without bounds." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594 (4th Cir. 2004). Rather, a court "must have 'good reason' for declining to exercise its declaratory judgment jurisdiction." *Id*. (citation omitted). One important factor in determining whether "good reason" exists to decline issuing a declaratory judgment is "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court . . . ." *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003). *See also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005) ("This discretion, while not unbounded, is especially crucial when, as here, a parallel or related proceeding is pending in state court."); *United States Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (noting that where a proceeding is pending in state court, federal courts must weigh considerations of comity).

Here, the declaration Therapearl seeks would have the court pronounce on the propriety of specific language in a potential injunction before a foreign court, raising concerns of "friction

---

relating to a Canadian patent application or Canadian patent rights," and "[t]he remedy being sought is, on its face, unrestrained by any geographic restriction." (Pl.'s Opp. to Mot. to Dismiss, Stratton Decl. Stratton ¶ 11, ECF No. 24-5.) But, as Rapid Aid notes, Stratton's statements merely point out that the second clause of the sought injunction does not include the words "in Canada." As already discussed, that alone is not enough to give rise to a controversy sufficient to justify a declaratory judgment.

between sovereign legal systems" and of comity. Accordingly, good reason exists for the court to exercise its discretionary authority to decline to issue the declaratory judgment Therapearl seeks.

### C. Sherman Act Claim

Count Two of Therpearl's complaint asserts a violation of Section 2 of the Sherman Act. Under Section 2 of the Sherman Act, "[e]very person who shall monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . ." 15 U.S.C. § 2. This provision is enforceable by "any person . . . injured in his business or property by reason of anything forbidden in the antitrust laws . . . ." 15 U.S.C. § 15(a).

Rapid Aid argues Therapearl's Sherman Act claim must be dismissed under Rule 12(b)(6) for a number of reasons, including failure to adequately allege a product market. A plaintiff in a Section 2 case must allege the product market subject to monopoly power or at risk of being monopolized. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441, 453 (4th Cir. 2011). "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962) (footnote omitted). "[T]wo products or services are reasonably interchangeable where there is sufficient cross-elasticity of demand. Cross-elasticity of demand exists if consumers would respond to a slight increase in the price of one product by switching to another product." *Todd v. Exxon Corp.*, 275 F.3d 191, 201-02 (2d Cir. 2001).

Market definition is a fact-intensive inquiry, and courts hesitate to grant motions to

dismiss for failure to plead a relevant product market. *Kolon Indus.*, 637 F.3d at 443. "There is, however, no absolute rule against the dismissal of antitrust claims for failure to allege a relevant product market." *Id.* (citation omitted). Dismissal on the pleadings is appropriate where the case involves "(1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way." *Id.* (citation omitted). *See also Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (noting that "[f]ailure to define the proposed relevant market" by reference to "reasonable interchangeability of use between a product and its substitute, or by their cross-elasticity of demand," may "result in dismissal of the complaint").

Therapearl's proposed product market fails for both reasons. First, the heart of Therapearl's claim is that Rapid Aid filed the Canadian suit "with the specific intent of eliminating Therapearl as a competitor *in the private label hot/cold product market*" at Shoppers. (Pl.'s Opp. to Mot. to Dismiss 6 (emphasis added).) Though Therapearl makes the conclusory allegation that the "relevant market consists of, but is not limited to, hot/cold therapy packs," (Compl. ¶ 68), none of Therapearl's allegations concern anything other than the private label contract Therapearl entered into with Shoppers. Therapearl never alleges, for example, that Rapid Aid acted to limit the availability of Therapearl-branded hot/cold therapy packs at Shoppers or any other outlet, or that Shoppers stopped carrying Therapearl-branded hot/cold therapy packs after Rapid Aid filed the Canadian suit. Therapearl's allegations thus limit the product market to both "a single brand" (Shoppers' private label) that competes against substitutes such as Therapearl-branded products, and "a single . . . franchise" (Shoppers) that

14

competes against other franchises supplying hot/cold therapy packs. *Kolon Indus.*, 637 F.3d at 443. Though a relevant market may consist of "a single brand of a product" where there is no reasonable interchangeability with comparable products, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481-82 (1992), Therapearl has not alleged (nor could it) that a pack produced and branded by Therapearl is anything but a reasonable substitute for a pack produced by Therapearl but branded by Shoppers. Accordingly, Therapearl's allegations do not present a relevant product market sufficient to support a Section 2 claim.

Therapearl's proposed product market also fails for a second, independent reason. Even assuming the relevant market is hot/cold therapy packs generally, rather than the private-label market at Shoppers, Therapearl has not attempted a plausible explanation as to why the market should be limited to hot/cold therapy packs and exclude potential substitute products. *Kolon Indus.*, 637 F.3d at 443. Therapearl has not alleged, for example, that therapy packs which become either just hot or just cold would not restrain Rapid Aid's ability to raise its products' prices. In other words, Therapearl has made no allegations concerning the "reasonable interchangeability of use or the cross-elasticity of demand between [hot/cold therapy packs] and substitutes for it." *Brown Shoe Co.*, 370 U.S. at 325. Its "[f]ailure to define the proposed relevant market in these terms" justifies dismissal of its Section 2 claim. *Broadcom*, 501 F.3d at 307.[10]

---

[10] Rapid Aid also argues, and the court agrees, that Therapearl has failed to state a claim under either an existing monopoly or attempted monopolization theory. "The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Kodak*, 504 U.S. at 481. "Although there is no fixed percentage market share that conclusively resolves whether monopoly power exists, the Supreme Court has never found a party with less than 75% market share to have monopoly power." *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 174 (4th Cir. 2014). Therapearl makes no allegation as to Rapid Aid's market share in the market of hot/cold therapy packs. Rather, Therapearl merely alleges Rapid Aid proclaims itself the "number one manufacturer of hot/cold therapy products worldwide" and "the largest private label manufacturer of hot/cold therapy products."

### D. Therapearl's State Law Claims

"[A] federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  When, however, "federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Cohill*, 484 U.S. at 350.  Because the court is dismissing Therapearl's federal law claims, it will decline to exercise jurisdiction over the state law claims, and will dismiss those claims without prejudice.

---

(Compl. ¶ 70.)  This is not enough to plead the existence of a monopoly, as it says nothing about how much of the market Rapid Aid controls, and includes no specific allegations.  *See Kolon Indus.*, 637 F.3d at 451 (holding the plaintiff adequately pled the existence of a monopoly by alleging a market share greater than 70%); *Kerns v. Range Res. - Appalachia, LLC*, No.10-23, 2011 WL 3753117 (N.D.W. Va. Aug. 23, 2011) ("The failure to include any specific allegations regarding Range's possession of monopoly power dooms the proposed claims.").  Therapearl notes in its opposition to Rapid Aid's motion to dismiss that "[b]ased on its research, . . . Rapid Aid possesses potentially as much as 100 percent of the private label market for hot/cold therapy products within Shoppers," and Therapearl could amend its complaint to so allege.  (Pl.'s Opp. to Mot. to Dismiss 32 n.51.)   This statement underscores Therapearl's confusion as to whether its proposed product market is hot/cold therapy packs generally, hot/cold therapy packs at Shoppers, or private label hot/cold therapy packs at Shoppers.  In any event, such an amendment would not help Therapearl because, as discussed above, this proposed allegation focuses on a single brand at a single franchise that competes against Therapearl's own products.
   "To state a claim for attempted monopolization, a claimant must plead: (1) the use of anticompetitive conduct, (2) with specific intent to monopolize, and (3) a dangerous probability of success."  *Kolon Indus.*, 637 F.3d at 453.  Aside from the conclusory allegation that Rapid Aid's conduct "presents a realistic and great probability of monopolizing and/or maintaining a monopoly and/or causing injury in the relevant market," (Compl. ¶ 73), Therapearl makes no specific allegations showing the Canadian litigation gave Rapid Aid a dangerous probability of establishing a monopoly.  Instead, it rests on the above statement, "a legal conclusion couched as a factual allegation" insufficient to state a claim for which relief can be granted.  *Twombly*, 550 U.S. at 555.  Accordingly, Therapearl has failed to allege a Section 2 claim under either an existing monopoly or attempted monopolization theory.

## CONCLUSION

For the reasons stated above, Therapearl's motion to enter default will be denied along with its motion to strike, and Rapid Aid's motion to dismiss will be granted.

A separate order follows.

<u>September 25, 2014</u>	     <u>        /s/                       </u>
Date	Catherine C. Blake
	United States District Judge